**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
**JOSEPH SUAZO**

                    Plaintiff,

                                                                                      **15 CV 9741 (GHW)**

   -against-

                                                                                        **SECOND AMENDED**
                                                                                        **COMPLAINT**

**THE CITY OF NEW YORK, NYPD DETECTIVE**
**JUGONY ROSADO (Shield 5109), NYPD SERGEANT**
**LUKE DENESOPOLIS (Shield 392), and POLICE**      **JURY TRIAL DEMANDED**
**OFFICERS, DETECTIVES and SUPERVISORS**
**JOHN and JANE DOES 1-10,**

                    Defendants.
-------------------------------------------------------------------------X

       Plaintiff **JOSEPH SUAZO,** by his attorney, Joel Berger, Esq., pursuant to Fed. R. Civ. P. 15 (a) (1) (B), within 21 days of service on May 3, 2016, of pleadings responsive to his first amended complaint, for his second amended complaint, alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

       1.     This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment and malicious prosecution, by employees of the New York City Police Department (NYPD). Plaintiff was arrested and imprisoned for approximately 42 hours, charged by defendants Rosado and Denesopolis with possession of narcotics with intent to sell (a class B felony), when in fact he never possessed any narcotics at all and prosecution was declined by the office of the Special Narcotics Prosecutor.

### *JURISDICTION AND VENUE*

       2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) (2) and (e) (1), in that all of the events giving rise to the claims -- plaintiff's arrest and imprisonment by defendants in New York County, defendants' conduct in attempting to bring about the prosecution of plaintiff in New York County, and the decision of the Office of the Special Narcotics Prosecutor for the City of New York to decline prosecution -- all occurred within this District.

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On June 1, 2015, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York by certified mail, return receipt requested, certified mail # 7012-3460-0001-1418-3999, pursuant to General Municipal Law § 50-e. The return receipt, signed by an employee of the Comptroller's office, establishes that it was received by that office on June 4, 2015. A letter from the Comptroller's office to plaintiff's counsel, dated June 12, 2015, acknowledged receipt of the claim and referenced it as Claim Number 2015PI016990.

7. At least thirty days have elapsed since the service of the Notice of Claim and Amended Notice of Claim, and adjustment or payment of the claim has been neglected or refused by defendant City of New York.

8. On October 28, 2015, a hearing was conducted by a representative of the Comptroller's office pursuant to New York State General Municipal Law Sec. 50-H, at which plaintiff testified.

9.  This action was commenced on December 14, 2015 -- within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

10. Plaintiff demands trial by jury in this action.

## *PARTIES*

11. Plaintiff **JOSEPH SUAZO**, age 33, is a citizen of the United States and a resident of New York State and New York County.

12. Plaintiff has never been arrested except in the Incident of this lawsuit, and has never been convicted of any offense.

13. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

14. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers, including the individually named defendants herein.

15. At all times relevant herein, defendant Jugony Rosado, Shield 5109, was an NYPD Detective assigned to the NYPD Organized Crime Drug Enforcement Strike Force, a unit of the NYPD Organized Crime Control Bureau, 1 Police Plaza, Rm. 1310, New York, NY 10038

16. At all times relevant herein, defendant Luke Denesopolis, Shield 392, was an NYPD Sergeant assigned to the NYPD Organized Crime Drug Enforcement Strike Force, a unit of the NYPD Organized Crime Control Bureau, 1 Police Plaza, Rm. 1310, New York, NY 10038

17. At all times relevant herein, defendants John and Jane Does 1-10 were police officers,

3

detectives and supervisory police officers employed by the NYPD and/or other law enforcement agencies. Plaintiff does not at this time know the real names and shield numbers and commands of defendants John and Jane Does 1-10.

18. At all times relevant herein, defendants Rosado, Denesopolis and John and Jane Does 1-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

19. At all times relevant herein, all defendants were all acting under color of state law and/or federal authority.

## *FACTS*

.
20. On Tuesday, April 14, 2015, at approximately 11:45 P.M., plaintiff was in his dwelling, 609 West 196th Street, apartment 3F, in upper Manhattan.

21. Plaintiff resides in Apartment 3F with his grandmother Esperanza Arias, age 95.

22. Plaintiff's mother also resides with him and Ms. Arias in Apartment 3F, but at the time of the incident alleged herein she was in the hospital recovering from back surgery.

23. The only other individual in Apartment 3F at the time of the incident alleged herein, other than plaintiff and his grandmother Esperanza Arias, was a friend of plaintiff, Leonardo Gaston, who lives at 17 Fort George Hill, Apartment 16E, also in Upper Manhattan. He was visiting plaintiff so that they could watch sports on television together. They watched a preview of a NHL Stanley Cup Rangers-Penguins hockey game scheduled for April 16, and an NBA basketball game (Wizards-Pacers), and were in the process of watching a second NBA game (Clippers-Suns) when the incident of this case transpired.

24. At approximately 11:45 P.M. on April 14, 2015, an NYPD police officer banged

4

loudly on plaintiff's door and demanded entry.

25. When plaintiff opened the door he and Gaston were immediately forced out the apartment door into the hallway and placed in handcuffs by defendant Rosado and other officers.

26. Rosado and the other officers shouted obscenities at plaintiff, yelling "we know what the fuck you do, don't fucking play dumb, you fucking asshole" and other statements of that nature.

27. Plaintiff and Gaston were kept standing handcuffed in the hallway outside plaintiff's apartment for approximately an hour.

28. Defendant Rosado and another officer, both in plainclothes, entered plaintiff's dwelling and began to search the apartment.

29. Defendants admit that they announced "police-search warrant" as they entered apartment 3F, even though they did not in fact have a warrant authorizing them to search apartment 3F and knew that they did not in fact have a warrant authorizing them to search apartment 3F.  They had a warrant authorizing them to search apartment 3J, issued at approximately 10:30 P.M. on April 14, 2015, but did not have a warrant authorizing them to search apartment 3F.

29a. Defendants claim that they had a valid "verbal" consent from a female resident of apartment 3F to search apartment 3F.  This claim is false.  The woman in question was encountered by the police in apartment 3J, not 3F; she was not a resident of apartment 3F; her ability to speak and understand English is extremely limited; and she had been detained by the police when they entered apartment 3J, and feared that she would be charged with possession of contraband found in apartment 3J if she did not cooperate with the police.

5

29b.    After the raid on apartment 3F and the arrest of plaintiff and Gaston, the police returned to apartment 3J and told the woman to sign a form that they said was a consent for her to be fingerprinted, when in fact what she unknowingly signed after-the-fact was a form stating that she consented to the search of apartment 3F.

29c.    The police did not have a knowing and intelligent consent from a bona fide resident of apartment 3F to search apartment 3F, and they admittedly lied to the occupants of apartment 3F by stating that they were entering apartment 3F pursuant to a search warrant.

30.    While in the hallway plaintiff observed that other police officers had previously entered and were already searching another apartment on his floor, Apartment 3J.

31.    A resident of Apartment 3J known to plaintiff only as "Sandy," who lived there with his mother, stepfather and sister, had already been arrested during the raid on his apartment.

32.    Any contraband found in Apartment 3J or otherwise in possession of "Sandy," or anywhere else on his floor or in plaintiff's building, or thrown from any window in plaintiff's building, did not come from plaintiff's dwelling, apartment 3F.

33.    Defendants found no contraband in plaintiff's dwelling, apartment 3F.

34.    Defendants found no contraband on plaintiff's person.

35.    Defendants found no contraband on Gaston's person.

36.    Despite the failure of the police to locate any contraband of any kind in apartment 3F or on the person of plaintiff or Gaston, defendant Rosado arrested plaintiff.

37.    Defendants transported plaintiff in handcuffs to the 34th police precinct, 4295 Broadway (approximately West 183rd Street).

38.    At the 34th precinct defendant Rosado wrote and submitted for approval an Arrest

Report charging plaintiff with (i) criminal possession of a controlled substance in the 3rd degree -- possession of a narcotic drug with intent to sell (Penal Law § 220.16.01, a class B felony), and (ii) criminal use of drug paraphernalia, scales, in the second degree (Penal Law § 220.50.03, a class A misdemeanor).

39. The charges set forth by defendant Rosado on the Arrest Report were untrue.

40. Neither Rosado nor any other officer had found any controlled substance in plaintiff's dwelling, or on his person, or in any manner connected with him.

41. Neither Rosado nor any other officer had found any drug paraphernalia in plaintiff's dwelling, or on his person, or in any manner connected with him.

42. The charges set forth in the Arrest Report, signed by Rosado and Denesopolis and presented to the prosecution in an effort to have plaintiff prosecuted, constituted the crime of Offering a False Instrument for Filing in the First Degree (PL § 175.35, a class E felony) as well as two class A misdemeanors (PL §§ 175.30 and 210.45), and also constituted the administrative offense of knowingly making a material false official statement, a violation of NYPD Patrol Guide 203-08, the punishment for which is presumptively dismissal from the Police Department.

43. Despite the absence of any evidence to support the charges, they were approved and signed by defendant Sergeant Denesopolis even though, upon information and belief, Denesopolis was present during the raid.

44. Plaintiff was photographed and fingerprinted at the 34th precinct.

45. Plaintiff was then transported in handcuffs to Manhattan Central Booking.

46. Plaintiff remained in custody at Manhattan Central Booking until approximately 6:00 P.M. on Thursday, April 16, 2015.

47. At approximately 6:00 P.M. on Thursday, April 16, 2015, plaintiff was released from Manhattan Central Booking without being brought before a judge.

48. Plaintiff was informed at that time that prosecution had been declined.

49. At the time of his release plaintiff had been imprisoned for approximately 42 hours.

50. On June 1, 2015, plaintiff submitted a Freedom of Information Law (FOIL) request to the District Attorney's Office of New York County requesting the Declined Prosecution Report.

51. By letter dated June 5, 2015, plaintiff was informed by Assistant District Attorney Maureen T. O'Connor, Deputy Chief of the Special Litigation Bureau, that prosecution had actually been declined by the Office of the Special Narcotics Prosecutor for the City of New York and that the FOIL request had been referred to that Office.

52. By letter dated June 24, 2015, signed by Roberto Gonzalez of the New York County District Attorney's Office, the Case Management Services of the Decline to Prosecute Unit of that Office verified that prosecution against plaintiff arising out of the arrest of April 14, 2015, (Arrest Number M15627360) had been declined.

53. On September 8, 2015, after repeated requests by plaintiff's counsel, the Office of the Special Narcotics Prosecutor responded to the FOIL request, providing the declined Prosecution Report and the Arrest Report.

54. The Declined Prosecution Report confirms that defendant Rosado was the arresting officer and that the location of arrest number M15627360 was 609 West 196th Street.

55. The Declined Prosecution Report reflects an "occurrence time" of 6:40 P.M. on Tuesday, April 14, 2015.

56. The Declined Prosecution Report reflects, contrary to the Arrest Report, that the

8

only offense for which Rosado asked of the Office of the Special Narcotics Prosecutor to prosecute was violation of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03, a class A misdemeanor). The June 24 letter of the Decline to Prosecute Unit of the New York County District Attorney's office also reflects that violation of Penal Law § 220.03 was the only "Original Charge."

57. The Declined Prosecution Report, signed by Supervising ADA Rubin, states the following reason for prosecution being declined:

> "Unable to Establish Necessary Element of the Crime"

58. The element of the crime that could not be established was possession. There had been no probable cause to arrest plaintiff. The arrest was patently illegal, unconstitutional, and a violation of plaintiff's civil rights.

59. At the 34th Precinct police officers had admitted to plaintiff that they had found no contraband in his home or on his person or in any other manner connected to him.

60. At the 34th Precinct police officers had admitted to plaintiff that the raid had nothing to do with him and stated that the decision to charge him was a "BS case," or words to that effect.

61. After plaintiff's release one of the officers involved in the arrest admitted to plaintiff that he could not understand why plaintiff had been arrested.

62. As a result of the arrest plaintiff's landlord is presently attempting to evict plaintiff's grandmother, the lessee of apartment 3F, from the apartment

63. Plaintiff's grandmother, 95 year-old Esperanza Arias, has lived in apartment 3F of 609 West 196th Street for approximately 40 years.

64. Plaintiff Joseph Suazo has lived in apartment 3F of 609 West 196th Street for virtually his entire life.

65. Plaintiff has had to retain an attorney to defend against the eviction proceeding.

66. Plaintiff has already been required to appear in Housing Court eight times, and a ninth appearance is scheduled for May 13, 2016.

67. The attempted eviction is being supported by the NYPD, which has sent two of the John Doe defendants herein to Housing Court to support the landlord's eviction petition.

68. At a Housing Court appearance, on November 13, 2015, plaintiff observed that two of the officers who had accompanied defendant Rosado in plaintiff's building on April 14, 2015, were in Housing Court waiting to testify if the case was to be tried that day.

### *OTHER LAWUITS AGAINST THE DEFENDANT OFFICERS*

69. Defendant Rosado has been a defendant in two recent lawsuits before this Court, costing the City of New York a total of $75,000 in settlements:

(a) In *Miles v. The City of New York, et al.*, 12 CV 7790 (VSB), Rosado and other officers arrested the plaintiff, strip-searched him and accused him of 14 counts of criminal possession and sales of weapons, when in fact Monrell Miles did not possess or sell any weapons and the charges were dismissed for insufficient evidence. Mediation pursuant to the SDNY "Plan" was unsuccessful, delaying the case for the first eight months, but after fuller discovery than allowed by the Plan the case was settled for $35,000, two years after it was filed.

(b) In *Sahel v. The City of New York*, 10 CV 3519 (RJS) (FM), Rosado and other officers arrested the plaintiff even though he was merely a visiting an acquaintance in a raided apartment, had entered the apartment only minutes before the raid, did not bear any physical

resemblance to two suspects identified in the warrant, and had no prior arrest record. The criminal charges, like the ones in *Miles*, were dismissed for insufficient evidence. Mr. Sahel's civil rights lawsuit pre-dated the Plan, was referred to Magistrate Judge Maas, and was settled for $40,000 at a settlement conference before Judge Maas within eight months of filing.

70. Defendant Denesopolis has been a defendant in *twelve* lawsuits in the Eastern District of New York. In this District he has been a defendant in at least one prior lawsuit, *Turner v. the City of New York, et al.*, 12 CV 4427 (BSJ) (GWG), in which he ordered the arrest of an innocent motorist on the false accusation that a cigarette wrapper in the vehicle contained traces of marijuana. The prosecution allowed the case to be dismissed on speedy trial grounds (CPL § 30.30), and the lawsuit was settled for a $22,500 less than six months after filing.

### *OTHER LAWUITS INVOLVING SIMILAR NYPD POLICE MISCONDUCT*

71. The NYPD has a uniform policy and practice of arresting residents of a raided dwelling even if no contraband can be plausibly connected to the residents.

72. Even if there are individuals in the dwelling who did not possess any contraband and were not in close proximity to any contraband and there was no contraband in open view, the NYPD frequently arrests such individuals.

73. Several recent cases in which the undersigned represented the plaintiffs, all settled expeditiously by the City of New York without extensive litigation, demonstrate this uniform policy. E.g., *Adams v. The City of New York,* 15 CV 2555 (WFK) (RER) (EDNY); *Kerr v. The City of New York*, 10 CV 4592 (RJH) (JLC) (SDNY); *Reed v. The City of New York*, 10 CV 3215 (LTS) (RLE) (SDNY); *Lozada and Sealy v. The City of New York*, 09 CV 9671 (LAK) (KNF) (SDNY); *Chiclana v. The City of New York*, 09 CV 623 (CM) (MHD) (SDNY); and *Robinson v. The City of*

*New York*, 12 CV 4220 (SJ) (JMA) (EDNY).  Another such case is presently pending, *Washington v. The City of New York*, 15 CV 7205 (PGG) (SDNY).  At least in these cases the officers discovered some contraband in the raided dwelling, albeit contraband to which the plaintiff had no connection of any kind.  This case is even more aggravated, as defendants found no contraband in plaintiff's dwelling, no contraband on his person or even on the person of his friend Gaston, and no contraband that could in any manner be connected to plaintiff.

74. The *Adams*, *Kerr*, *Reed*, *Lozada/Sealey*, *Chiclana*, *Robinson* and *Washington* cases all demonstrate that the arrest, imprisonment and charging of the plaintiff in this case, including the felony charge of possession of a controlled substance with intent to sell, was anything but an aberration.  The NYPD persists in a pattern of deliberate indifference to the constitutional and civil rights of innocent bystanders in buildings and homes where contraband is found.  The City then usually settles the ensuing lawsuits but does not discipline or punish the officers involved.

### *FIRST CLAIM FOR RELIEF*

75. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-74.

76. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

77. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-74 and 76.

78. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police

officers and supervisory officers.

79. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

80. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-92, 94 and 96-97 violated plaintiff's rights guaranteed by 42 USC § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

81. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-74, 76, and 78-80.

82. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, and employee negligence.

83. The conduct toward plaintiff alleged herein subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### FOURTH CLAIM FOR RELIEF

84. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-74, 76, 78-80, and 82-83.

85. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## *FIFTH CLAIM FOR RELIEF*

86. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-74, 76, 78-80, 82-83, and 85.

87. To the extent that defendants Rosado and Denesopolis may have been acting under the direction of the United States Drug Enforcement Administration (DEA), a federal government agency (answer of defendant City of New York, ¶¶ 15-16, answer of defendant Rosado, ¶¶ 15-16, answer of defendant Denesopolis, ¶¶ 15-16), and therefore under color of federal authority, their conduct toward plaintiff alleged herein violated plaintiff's rights guaranteed by the Fourth Amendment to the Constitution of the United States, and is therefore actionable before this Court pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 6, 2016

Respectfully submitted,

/s/ Joel Berger
**JOEL BERGER
360 LEXINGTON AVE., 16th FL.
NEW YORK, NY 10017
(212) 687-1425**

**ATTORNEY FOR PLAINTIFF**

TO:  (By ECF)

**ALAN SHEINER, ESQ.**
**NYC LAW DEPARTMENT**
**SPECIAL FEDERAL LITIGATION DIVISION**
**100 CHURCH STREET**
**NEW YORK, NY 10007**

**ATTORNEY FOR DEFENDANT**
**CITY OF NEW YORK**

**TALIA KRAMER, ESQ**
**ASSISTANT UNITED STATES ATTORNEY**
**86 CHAMBERS STREETR, 3rd FLOOR**
**NEW YORK, NY 10007**

**ATTORNEY FOR DEFENDANTS**
**ROSADO AND DENESOPOLIS**